# THE GERMAN MUTUAL INSURANCE COMPANY OF INDIANAPOLIS
## *v.* GRIM and Others.

VOLUNTARY CONVEYANCE. — *Estoppel.* — *Subsequent Purchaser.* — *Equities of Voluntary Grantee.—Relation.—Lis Pendens.*—The owner of certain real estate, intending to convey the same to his daughter as a gift, executed a voluntary deed of conveyance, without valuable consideration, though purporting on its face to be made in consideration of a certain sum paid by the grantee named to the grantor, the receipt of which was therein acknowledged. By mistake of the draftsman, said deed improperly described the premises, and the name of the husband of said daughter, instead of that of his wife, was inserted as the grantee. The grantor executed the deed under the belief that it conveyed the property to his said daughter, and delivered it to her and put her into the possession of the premises so intended to be conveyed, and on the day of its execution said deed was placed on record. Afterwards, said husband executed a mortgage, with the same erroneous description of premises, to a *bona fide* mortgagee for value, who, without notice of said mistakes, upon foreclosure of the mortgage, purchased at the sheriff's sale and received from the sheriff a deed with said improper description. Suit by said purchaser to correct the description of the premises in said deeds and mortgage, pending which said father, discovering for

250 SUPREME COURT OF INDIANA.

The German Mutual Insurance Company of Indianapolis *v.* Grim and Others.

the first time the mistake in the name of the grantee and in the description of the property, executed to his said daughter another voluntary deed of conveyance, without valuable consideration, containing a proper description of the premises so intended to be conveyed.

*Held,* that as against the plaintiff said grantor was estopped to deny that his said original deed was made for a valuable consideration as expressed on its face, or that the proper grantee was named therein.

*Held,* also, that the fact that the plaintiff was compelled to appeal to the chancery powers of the court to correct said mistake in the description of the land, did not avoid such estoppel.

*Held,* also, that said original deed did not invest said daughter with any equity which she could have enforced against her father or the plaintiff.

*Held,* also, that said subsequent deed to said daughter could not, by relation back to the date of said original deed, invest her with the legal title as of that date, to the prejudice of the plaintiff.

*Held,* also, that said deed executed pending the suit could have no effect on the prior equities of the plaintiff.

RELATION.—The doctrine of relation cannot be invoked to work a fraud or to prejudice the intervening rights of an innocent purchaser for value.

ADVERSE POSSESSION.—*Maintenance.*—A deed of conveyance of real estate, executed to a person while another is in possession of the premises under a claim of title adverse to both the grantor and grantee therein, is void for maintenance.

DEED.—*Construction.*—*Description of Premises.*—The general rule in regard to the construction of the description of the premises in a deed is one of the utmost liberality. The intent of the parties, if it can, by any possibility, be gathered from the language employed, will be effectuated.

SAME.—*Reference to Other Deed.*—Where one deed refers to another for description of the granted premises, reference may be had to the description in the latter to aid in the construction of the description in the former.

APPEAL from the Floyd Circuit Court.

This suit was instituted by the German Mutual Insurance Company of Indianapolis, the appellant here, against Louis Grim and Wendal Ritter and wife. It is alleged in the complaint, that the appellee Ritter and his wife, being seized of a part of lot 27, on Upper Spring street, in New Albany, bounded by a line beginning at the south-east corner of said lot on Upper Fourth street, and running thence northwardly seventy feet, thence westwardly sixty feet, thence southwardly seventy feet, thence eastwardly sixty feet to the place of beginning, on the 19th of February, 1867, sold and conveyed to the appellee Louis Grim a part of said real

estate, describing it in the conveyance, by mistake of the draftsman, as "the middle twenty-two (22) feet four (4) inches of lot number 27 on Upper Spring street, being 22 feet 4 inches in front and rear, and extending back the same width 60 feet, being part of lot held by said Ritter under a deed from John Yager and wife, recorded in book W, page 363;" the correct description of the property so sold and intended to be conveyed, and of which Grim was put into possession under the conveyance, being "all that part of lot number 27 on Upper Spring street, which is bounded by a line beginning *seventy-two and one-third feet* from the north-east corner of said lot on Upper Fourth street, and running thence southwardly with the line of said Upper Fourth street 22$\frac{1}{3}$ feet, thence westwardly, at right angles to said street, 60 feet, thence northwardly, along the west line of said lot, 22$\frac{1}{3}$ feet, and thence eastwardly 60 feet to the place of beginning;" that, in 1861, Grim mortgaged said premises to the plaintiff by the same erroneous description—being misled by the deed to him— to secure a note for five hundred and seventy-five dollars, executed by him to the plaintiff, which mortgage was afterwards foreclosed, and a judgment rendered for the sale of the mortgaged premises; that upon a sale under the said judgment, the plaintiff became the purchaser thereof, and received a sheriff's deed therefor, by the same erroneous description, the error not then having been discovered, or until long afterwards. The prayer was to reform the deeds from Ritter and the sheriff and the mortgage, so as to correct the error in the description of the property.

Grim answered by a general denial.

Mrs. Ritter died pending the suit.

Ritter answered in two paragraphs.

The first was a general denial. A demurrer was sustained to the second, and he then filed a third paragraph, in the nature of a cross complaint. It admits that he was the owner of the property described in the complaint, and alleges, that Catharine Grim, the wife of Louis, is his (Rit-

ter's) daughter, and that, for the purpose of providing for her, he intended to make the conveyance to her as a gift, and not to her husband; that no valuable consideration was ever paid to him, or intended to be paid, for said premises, by Louis Grim or any other person; that he, Ritter, speaking and understanding the English language imperfectly, the draftsman misunderstood his instructions, and the deed not having been explained to him before its execution, so that he could understand its contents, he executed it in the belief that it conveyed the property to Mrs. Grim; that he delivered the deed to her and put her into the possession of the premises intended to be conveyed; that the mistake in the name of the grantee, and in the description of the property, was not discovered by Ritter until after this suit was commenced, since which he has conveyed the premises to said Catharine by a proper description; that said Catharine has an interest in the subject matter of the suit adverse to the claim of the plaintiff. Prayer, that she be made a party defendant, and that her title to the premises, under said gift and deed, be perfected and confirmed.

A demurrer to this paragraph being overruled, the plaintiff replied by a general denial. Catharine Grim was then made a defendant, who appeared and filed a separate answer to the complaint in two paragraphs.

1st. The general denial.

2d. Adopting the answer and cross complaint of Ritter, and averring that the allegations therein are true in substance and in fact, and praying a confirmation of her title to the premises.

A demurrer to the latter paragraph being overruled, the plaintiff excepted and filed a reply in denial thereof.

The issues thus formed were tried by the court. There was a finding for the defendants. After overruling a motion for a new trial, to which the plaintiff excepted, the court rendered judgment against the plaintiff, and that the title of said Catharine Grim to the premises in controversy, "under the deed mentioned in the plaintiff's complaint, as

corrected by the said deed of the date of May 4th, 1864, be, and the same is hereby, confirmed."

ELLIOTT, J.—We are compelled to examine the important questions presented by the record in this case without any argument in behalf of the appellees.

The material questions in the case arise upon the third paragraph of Ritter's answer and cross complaint, which was also adopted by Mrs. Grim, and to which the circuit court overruled a demurrer. Was that ruling correct?

We will first examine the questions raised by the complaint and the answer with reference to the position and rights of Ritter in opposition to the appellant. The points presented by the answer are, that the deed from Ritter to Grim was voluntary and made without any valuable consideration whatever; that it was intended to be made to Mrs. Grim as a gift, and under the belief that she was named as the grantee, the deed was delivered to her and she was put into the possession of the premises intended to be conveyed; but that by the mistake of the draftsman the conveyance not only failed to contain a proper description of the premises, as alleged in the complaint, but the name of Louis Grim was inserted in it erroneously as the grantee, instead of his wife, Catharine Grim, as was intended by the grantor; and that Ritter, upon the discovery of said mistakes, after the commencement of this suit, executed to Mrs. Grim another deed containing a proper description of the premises. These facts seem to have been regarded by the circuit court as sufficient to raise a superior equity in Mrs. Grim, and to constitute a valid defense to the action on the part of Ritter. The only averments in the answer which Ritter could possibly rely upon as a defense are, that the deed to Grim was made without any valuable consideration, and that by mistake of the draftsman it was made to Louis instead of Catharine Grim. The appellant occupies the relation of an innocent purchaser, for a valuable consideration, from Louis Grim. The deed from

Ritter to Grim purports upon its face to have been made for the valuable consideration of two hundred dollars, paid by Grim to Ritter, the receipt of which is acknowledged. It was placed on record on the day of its execution. The answer contains no averment of notice to the appellant, at any time, that the conveyance to Grim was voluntary, or of the alleged mistake in the name of the grantee. In the absence of such notice, the appellant was authorized to presume that the deed was made upon a valuable consideration, as expressed upon its face, and that the proper grantee was named therein; and the appellant having become a purchaser for a valuable consideration, in good faith, from the grantee named in the deed, Ritter must be held as estopped to deny that the deed was made for a valuable consideration, or that the grantee was properly named, and thereby defeat the appellant's title under it. *Guard* v. *Bradley*, 7 Ind. 600; *Trimble* v. *The State*, 4 Blackf. 435. And the fact that the appellant was compelled to appeal to the chancery powers of the court to correct the mistake in the description of the land, does not avoid the estoppel. Such estoppels, when consistent with the principles of equity and good conscience, are recognized and enforced in courts of equity the same as at law. Here, the appellant, relying upon the facts apparent on the face of the deed from Ritter to Grim, became the purchaser under the latter, in good faith, for a valuable consideration, and it would be a fraud on the appellant if Ritter were now permitted to deny the truth of the recitals in his deed, and thereby defeat the appellant's title, which equity will not sanction.

We will now examine the question as to the claims of Mrs. Grim, and see whether her position is a more advantageous one than that occupied by Ritter.

The claim of Mrs. Grim is, that the conveyance from Ritter, which, in fact, was made to her husband, was intended to be made to her as a voluntary gift from her father.

If, then, the deed had been made to Mrs. Grim, as she claims it was intended to be, she would have occupied the

position of a voluntary grantee, without a valuable consideration; but if the conveyance did not describe the premises intended to be conveyed, it would still have been inoperative, and for that reason would not have been an executed gift; and as the conveyance was merely, voluntary, it did not invest her with any equity which she could have enforced, even as against Ritter, and much less as against a purchaser for a valuable consideration, in good faith, from the grantee named in the deed. It is settled, at least in this State, that a voluntary executory contract for the conveyance of land will not be specifically enforced; nor will a voluntary deed be corrected of mistakes on the application of the grantee against the grantor, though it will be on the application of the grantor against the grantee, where, by mistake, the conveyance is for a larger estate than was intended. *Andrews* v. *Andrews*, 12 Ind. 348; *Froman* v. *Froman*, 13 Ind. 317; *Randall* v. *Ghent*, 19 Ind. 271.

In *Froman* v. *Froman*, *supra*, a father made a voluntary conveyance of a tract of land to one of his sons, but, by mistake, described the land as being the south-east quarter of a certain section, instead of the south-west quarter. Subsequently the father made a voluntary conveyance of the land, by a proper description, to his other children. On an application for partition among the latter, the son to whom the first conveyance was made set it up to defeat the subsequent conveyance, and asked that the mistake in the description of the land might be corrected. It was held, on appeal to this court, that equity would not aid in perfecting a title under a voluntary deed in such a case.

Cases are found in which a distinction is attempted to be drawn in such instances between a voluntary executory contract or conveyance to a stranger and one to a child, where it is deemed to be founded on a meritorious consideration. The case of *Ellis* v. *Nimmo*, Ll. & G. *temp.* S. 333, is a leading one of this class, in which it was held, that a voluntary contract, in writing, by a father to make a post-nuptial provision, or settlement, upon his daughter, might be enforced

against him in equity, as being founded on a meritorious, although not a valuable, consideration. Justice STORY, in commenting on that case, says, "But this doctrine has been since denied, and the general rule seems now established, that the court will not execute a voluntary contract, but will withhold assistance from a volunteer, whether he seeks to have the benefit of a contract, or a covenant, or a settlement." Story Eq. § 793 *d.* See, also, § 164. A distinction seems to be drawn between cases of this character and those of a defective execution of a power, in which it is said relief may be granted in favor of a voluntary donee.

From the decree rendered in the case, it may be inferred that the learned judge who tried the case in the circuit court regarded the deed executed by Ritter to Mrs. Grim, pending the suit, as relating back to the date of the conveyance to Louis Grim, and as investing Mrs. Grim with the legal title, as of that date. But it must be remembered that the appellant had, in the mean time, become the purchaser of the premises for a valuable consideration, under the conveyance to Louis Grim, without notice of Mrs. Grim's claim; and hence the subsequent voluntary conveyance to her by Ritter could not prejudice the rights of the appellant thus acquired. The doctrine of relation cannot be invoked to work a fraud or prejudice the intervening rights of an innocent purchaser for value. *Fite* v. *Doe*, 1 Blackf. 127; *Jackson* v. *Bard,* 4 John. 230.

The deed from Ritter to Mrs. Grim of the 4th of May, 1864, must, therefore, stand upon its own merits, and, having been executed pending this suit, can have no effect on the prior equities of the appellant.

Where the equities of the parties are equal, that having priority in time will prevail. But here Mrs. Grim, as we have seen, had no claim under the conveyance to Louis Grim which a court of equity would enforce, even as against Ritter. But if it were otherwise, still as her claim is only that of a voluntary grantee, whilst the appellant claims as a *bona fide* purchaser for a valuable consideration, without

notice of the claim of Mrs. Grim, the equities are not equal; that of the appellant is superior, and must prevail.

In any view of the case, it seems clear that the facts alleged in the third paragraph of the answer and cross complaint do not constitute a valid defense to the complaint, in favor of either Ritter or Mrs. Grim, and that the court erred, therefore, in overruling the demurrer.

It appears by the evidence in the case, that the appellant was in possession of the premises in controversy at the date of the conveyance by Ritter to Mrs. Grim of the 4th of May, 1864, under a claim of title adverse to both Ritter and Mrs. Grim. And it is well settled, that a deed executed under such circumstances is void for maintenance. *Fite* v. *Doe*, 1 Blackf. 127; *Leslie* v. *Slusher*, 15 Ind. 166; *Martin* v. *Pace*, 6 Blackf. 99; *Galbreath* v. *Doe*, 8 Blackf. 366.

From the facts presented by the pleadings and evidence in the case, we are not prepared to say that the deed from Ritter to Louis Grim is void for uncertainty in the description of the premises conveyed, or intended to be conveyed, thereby, or that the property intended to be conveyed may not be located under it. The part of the description in the deed material to this question reads thus: "and being the middle 22 feet 4 inches of lot number 27, on Upper Spring street, being 22 feet 4 inches in front and rear, and extending back the same width 60 feet; *being part of the lot held by said Ritter under deed from John Yager and wife, recorded in Book 'W,' page 363.*"

The latter part of the description, which we have italicised, seems to have been overlooked by the appellant's counsel, and the deed from Yager to Ritter referred to was not given in evidence. Nor do the pleadings state either the length or width of the lot, but it is alleged in the complaint that Ritter owned the south part thereof, extending from the south line northward seventy feet, fronting on Upper Fourth street on the east, and extending back sixty feet, and that Ritter intended by the deed to convey the

middle portion thereof, being twenty-two feet and four inches in front and rear. These facts are admitted by the third paragraph of Ritter's answer. The form and dimensions of the lot would be ascertained by reference to the recorded plat; but the evidence shows that its width is sixty feet, fronting on Upper Spring street, and its length one hundred and twenty feet, fronting on the east on Upper Fourth street. Ritter testifies that he formerly owned a part of said lot twenty-seven, fronting on Upper Fourth street, and divided it into three parts of about twenty-two and one-third feet front each, one of which he sold, and conveyed another to his son-in-law Bowman, and intended the third one for his daughter Mrs. Grim.

The general rule in regard to the construction of the description of the premises in a deed is one of the utmost liberality. The intent of the parties, if it can by any possibility be gathered from the language employed, will be effectuated. *Peck* v. *Mallams*, 10 N. Y. 509; *Key* v. *Ostrander*, 29 Ind. 1.

It is also a rule of construction, that where one deed refers to another for description of the granted premises, reference may be had to the description in the latter to aid that of the former. 3 Washb. Real Prop. b. 2, p. 638; *Key* v. *Ostrander, supra.* Now, applying these rules to the present case, it seems but reasonable to construe the description in the deed from Ritter to Louis Grim as meaning twenty-two feet and four inches in front and rear, and extending back the same width sixty feet, of that part of lot twenty-seven, on Upper Spring street, held by said Ritter under deed from John Yager and wife, recorded in Book W, page 363. And if, by reference to the recorded plat and the deed of Yager to Ritter referred to, the middle third of the premises described in the latter deed should correspond with the premises intended to be conveyed, as the evidence indicates, there would seem to be no difficulty in locating the premises. At any rate, should such difficulty be found to exist, it would result from the practical

NOVEMBER TERM, 1869.          259

application of the middle third of the premises conveyed by Yager to Ritter to the premises intended to be conveyed by the deed to Louis Grim, and would not be apparent from the description itself; and the deed, therefore, could not be held void for uncertainty in the description.

The judgment is reversed, with costs, and the cause remanded, with directions to the circuit court to sustain the demurrer to the third paragraph of the answer and cross complaint of Ritter, and to the second paragraph of the answer and cross complaint of Catharine Grim, and for further proceedings not inconsistent with this opinion.

*T. L. Smith, M. C. Kerr, J. A. Ghormley,* and *A. Seidensticker,* for appellant.

*G. V. Howk* and *R. M. Weir,* for appellees.